# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF MONTANA
# BILLINGS DIVISION

| | |
|---|---|
| EXXONMOBIL CORPORATION, d/b/a EXXONMOBIL BILLINGS REFINERY,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STEEL WORKERS LOCAL UNION 11-470,<br><br>Defendant. | CV 15-123-BLG-CSO<br><br>**ORDER ADDRESSING CROSS MOTIONS FOR SUMMARY JUDGMENT** |

## I. Introduction

This is an arbitration award review action. Plaintiff ExxonMobil Corporation, d/b/a ExxonMobil Billings Refinery ("ExxonMobil" or the "Company"), seeks to vacate the award and Defendant United Steel Workers Local Union 11-470 (the "Union") seeks to enforce it. The award concluded that ExxonMobil violated the parties' collective bargaining agreement by not filling a vacant janitor position with a bargaining unit employee while instead transferring the position's duties to contract employees.

This Court has jurisdiction under Section 301 of the Labor Management Relations Act ("LMRA"), 29 U.S.C. § 185. By Notice filed January 28, 2016, upon the parties' written consent, this matter was assigned to the undersigned for all proceedings. *Notice of Assignment (ECF No. 17)*.

Before the Court are the parties' cross motions for summary judgment. *Union's Mtn. (ECF No. 27) and ExxonMobil's Mtn. (ECF No. 30)*. For the reasons discussed below, the Court grants the Union's motion and denies ExxonMobil's motion.

## II. **Background**[1]

ExxonMobil operates a crude oil refinery in Billings, Montana. As of August 26, 2015, the Union represented approximately 145 of the refinery's employees.

ExxonMobil and the Union have had a bargaining relationship since 1945. Relevant to this action, ExxonMobil and the Union entered into a collective bargaining agreement (the "Agreement") (*ECF No. 1-2*) effective February 1, 2012 through January 31, 2015. The Agreement

---

[1]The background facts, taken from the parties Statement of Stipulated Facts (*ECF No. 20*), are undisputed.

covered employment terms and conditions of ExxonMobil employees at the Billings Refinery, excluding technical, office, clerical, sales employees, armed guards, and supervisors. The parties agree that the Agreement must be interpreted as a whole, but for purposes of the instant action further agree that the most relevant provisions are: (1) Article XIV Arbitration; (2) Article XVI Miscellaneous; (3) Article XX Contract Work; and (4) Article XXII Reservations of Management.

The parties negotiated the subcontracting rights provision contained in Article XX during their 2012 negotiations. It contained newly-agreed-upon language. In December 2012, after the Agreement's implementation, Vince Castro, ExxonMobil's In-Plant Janitor at the refinery, voluntarily decided to retire. Rather than fill Mr. Castro's position, ExxonMobil chose to contract out his duties to a third-party janitorial service.

ExxonMobil's decision to contract out the duties that Mr. Castro previously performed did not result in the layoff of any bargaining unit member. The decision did, however, result in the In-Plant Janitor position no longer being filled by a member of the bargaining unit.

Before Mr. Castro's retirement, ExxonMobil already contracted out the majority of its janitorial work.  ExxonMobil's reliance on third-party contractors to perform the majority of its janitorial work predated the parties commencing 2012 contract negotiations.  There are approximately 80-100 contractors who perform work for ExxonMobil at its Billings refinery on a day-to-day basis.  ExxonMobil's ongoing relationship with these third-party contractors has not caused an overall decrease in the size of the Union's bargaining unit.

On December 13, 2012, the Union filed a grievance (the "Grievance") (*ECF No. 11-1*) relating to ExxonMobil's decision to contract out the work that Mr. Castro previously performed.  The parties were unable to resolve the matter through the lower levels of the grievance procedure, as set forth in Article XIV of the Agreement, and the Union requested arbitration of the Grievance.

The parties were unable to agree on the issue presented to Arbitrator James A. Lundberg ("Arbitrator Lundberg").  ExxonMobil proposed the issue as: "Did the Company violate the Articles of Agreement by contracting out the In-Plant Janitor position, after the

incumbent In-Plant Janitor retired?  If so, what shall the remedy be?" The Union proposed the issue as: "Did the Company violate the Articles of Agreement by not filling the In-Plant Janitor position, after the incumbent In-Plant Janitor retired?  If so, what shall the remedy be?" Arbitrator Lundberg, therefore, was tasked with deciding whether ExxonMobil's decision to contract out the work or not fill the position formerly performed by Mr. Castro violated the Agreement.

On July 15, 2015, a hearing was held before Arbitrator Lundberg. On August 26, 2015, following the hearing and submission of post-hearing briefs by the parties, Arbitrator Lundberg issued a Grievance Arbitration Opinion and Award (the "Award") (*ECF No. 1-1*) sustaining the Grievance and finding that ExxonMobil's decision to contract out these duties constituted an erosion of the bargaining unit, in violation of Article XVI of the Agreement.

On November 24, 2015, ExxonMobil filed this action seeking to vacate the Award.  On January 8, 2016, the Union filed an Answer and Counterclaim seeking, inter alia, to dismiss ExxonMobil's Complaint and to enforce the Award.

## III. Summary of the Parties' Arguments

### A. The Union

The Union argues as follows:

The Court should enforce the Award under well-established Ninth Circuit authority. Arbitrator Lundberg acted within his authority in rationally resolving the dispute. And, the Award properly draws its essence from the Agreement. *Union's Opening Br. (ECF No. 28) at 9*.

More specifically, the Award is enforceable because: (1) the parties agreed that their dispute was properly before Arbitrator Lundberg pursuant to the Agreement, *id. at 11*; (2) Arbitrator Lundberg: (a) correctly cited all relevant Agreement provisions; (b) accurately summarized both parties' positions; ©) correctly noted that the parties focused on different provisions of the Agreement; (d) properly interpreted Article XX's contracting-out language as less than absolute to give effect to Article XVI's bargaining unit-erosion language; and (e) properly distinguished an earlier arbitration award in which – unlike the situation here – there was no net loss of bargaining unit positions when certain lab analysts work was contracted out, *id. at 11-13*; (3) the

arbitrator's consideration of arbitration awards that predate the 2012 Agreement was not improper because it put in context the "law of the shop" and was not beyond the arbitrator's authority to consider them, *id. at 14*; and (4) if the arbitrator was "even arguably" construing or applying the Agreement, the Court is not permitted to overrule him under well-established authority, *id. at 15*.

### B. ExxonMobil's Arguments

ExxonMobil argues as follows:

The Court must vacate the Award as null, void, and of no effect. *ExxonMobil's Opening Br. (ECF No. 31) at 2.* The Award falls within a class of arbitration awards that the law of the Ninth Circuit allows to be vacated. Arbitrator Lundberg impermissibly ignored Agreement language. He tried to force ExxonMobil and the Union into unscheduled negotiations to construct what he deemed a fair outcome, and thus dispensed his own form of industrial justice. *Id. at 7.* In doing so, he fashioned an award that does not draw its essence from the Agreement. *Id*.

First, even though judicial review of arbitration awards is limited,

such awards can be vacated when an award ignores plain contract language. *Id.* When Arbitrator Lundberg ignored the Agreement's language, the Award he issued failed to draw its essence from the Agreement. *Id. at 8.* He disregarded applicable subcontracting language in the Agreement that the parties' negotiated in 2012 to form the Agreement and instead relied on Agreement language that does not cover subcontracting. Rather, the language relied upon applies only to situations in which ExxonMobil transfers work to Company employees excluded from the bargaining unit – a situation not present here. Thus, the Award does not draw its essence from the Agreement. *Id. at 9-10.*

Second, Arbitrator Lundberg impermissibly tried to force the parties to negotiate new contract language rather than apply the existing Agreement language. *Id. at 10.* In doing so, he improperly "based his decision on supposition, economic impact, and his subjective belief that the [p]arties should return to the bargaining table." *Id. at 11* (emphasis omitted). Such conduct is an example of an arbitrator's dispensing his or her own "brand of industrial justice" that requires vacating an arbitration award. *Id.*

Third, Arbitrator Lundberg exceeded the scope of his authority under the parties' Agreement. *Id. at 11-13.* Specifically, he: (1) improperly relied on pre-2012 Agreement awards; and (2) impermissibly modified Agreement language to force ExxonMobil to the bargaining table by changing Article XVI Section 6 from a provision applicable only to transfer of work among Company employees to one also applicable to the transfer of work to third-party non-employee subcontractors, effectively rewriting the Agreement and exceeding the scope of his authority, *id. at 13*.

## IV. Applicable Law

### A. Summary Judgment Standard

"The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party seeking summary judgment always bears the initial responsibility of informing the court of the basis for its motion, and identifying those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes

demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

Material facts are those which may affect the outcome of the case. *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248 (1986). A dispute as to a material fact is genuine if there is sufficient evidence for a reasonable fact-finder to return a verdict for the nonmoving party. *Id*. If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue of fact exists. *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986).

When parties file cross-motions for summary judgment, as here, the Court must consider each motion on its own merits. *Fair Housing Council of Riverside County, Inc. v. Riverside Two*, 249 F.3d 1132, 1136 (9th Cir. 2001). The fact that both parties have moved for summary judgment does not vitiate the Court's responsibility to determine whether disputed issues of material fact are present. *Id.*

### B. Court Review of Arbitration Awards

The Ninth Circuit very recently explained that, "[b]ecause of the

centrality of the arbitration process to stable collective bargaining relationships, courts reviewing labor arbitration awards afford a 'nearly unparalleled degree of deference' to the arbitrator's decision." *Southwest Regional Council of Carpenters v. Drywall Dynamics, Inc.*, ___ F.3d ___, 2016 WL 2909241, *3 (9th Cir., May 19, 2016) ("*Drywall Dynamics*") (*quoting Stead Motors of Walnut Creek v. Auto. Machinists Lodge No. 1173, Int'l Ass'n of Machinists & Aerospace Workers*, 886 F.2d 1200, 1204-05 (9th Cir. 1989) (en banc). Courts reviewing arbitration awards are to apply this heightened deference "both to the arbitrator's interpretation of the parties' agreement and to his findings of fact." *Id*. (*citing Stead Motors*, 886 F.2d at 1207).

Respecting contractual interpretation in this context, the Supreme Court has admonished that "the parties hav[e] authorized the arbitrator to give meaning to the language of the agreement, [so] a court should not reject an award on the ground that the arbitrator misread the contract." *Id.* (*quoting United Paperworkers Int'l Union, AFL–CIO v. Misco, Inc.*, 484 U.S. 29, 38 (1987)). The Ninth Circuit embraces this admonition explaining that "even if we were convinced that the

arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award." *Id*. (*quoting Virginia Mason Hosp. v. Washington State Nurses Assn*, 511 F.3d 908, 913-14 (9th Cir. 2007) (footnote omitted)). "Indeed, '[s]ince the labor arbitrator is designed to function in essence as the parties' surrogate, he cannot "misinterpret" a collective bargaining agreement.'" *Id*. (*quoting Stead Motors*, 886 F.2d at 1205). "[A]s long as the arbitrator is even arguably construing or applying the contract and acting within the scope of his authority," a court must uphold the award. *Id*. (*quoting Misco*, 484 U.S. at 38). Thus, "[a] court may intervene only when an arbitrator's award fails to 'draw[ ] its essence from the collective bargaining agreement,' such that the arbitrator is merely 'dispens[ing] his own brand of industrial justice.'" *Id*. (*quoting United Steelworkers of Am. v. Enterprise Wheel & Car Corp.*, 363 U.S. 593, 597 (1960)).

And, respecting fact finding in this context, "[t]he parties did not bargain for the facts to be found by a court, but by an arbitrator chosen by them." *Id. at \*4* (*quoting Misco*, 484 U.S. at 45). Thus, "improvident,

even silly, factfinding ... is hardly a sufficient basis for disregarding what the agent appointed by the parties determined to be the historical facts." *Id*. (*quoting Misco*, 484 U.S. at 39). Consequently, a court cannot disregard the arbitrator's factual findings nor supplement them with its own findings. *Id*. (*citing Stead Motors*, 886 F.2d at 1207).

Only under "limited circumstances" is "the vacatur of a labor arbitration award . . . justified." *Id*. The Ninth Circuit has recognized only four such circumstances: "(1) when the award does not draw its essence from the collective bargaining agreement and the arbitrator is dispensing his own brand of industrial justice; (2) where the arbitrator exceeds the boundaries of the issues submitted to him; (3) when the award is contrary to public policy; or (4) when the award is procured by fraud." *Id*. (*quoting Southern Cal. Gas Co. v. Utility Workers Union of Am., Local 132, AFL-CIO*, 265 F.3d 787, 792-93 (9th Cir. 2001)).

V. **Discussion**

Here, ExxonMobil relies on the first circumstance listed above in seeking vacatur of the Award. The Court is not persuaded.

Arbitrator Lundberg's Award clearly was grounded in his

consideration of the parties' Agreement. First, he set forth, verbatim, the relevant Agreement provisions. *ECF No. 1-1 at 2-3*. He noted that ExxonMobil relied on Article XX to support its position that "the assignment of work to a contractor did not cause a lay off of any bargaining unit employee, since the bargaining unit employee who previously filled the position retired." *Id. at 10*. And, he noted, the Union relied on Article XVI (6) to support its position that ExxonMobil is prohibited from eroding the bargaining unit. *Id*.

Arbitrator Lundberg further observed that "there is no question that the 2012 collective bargaining agreement includes a bargaining unit classification of In-Plant Janitor" while also noting that "a proposal to eliminate the In-Plant Janitor position from the bargaining unit was not agreed upon during negotiations over the 2012 contract." *Id. at 11*. He then quoted from arbitration hearing testimony concerning the In-Plant Janitor position in the 2012 Agreement negotiations. *Id. at 11-12*.

From the Award's language, it is readily apparent that Arbitrator Lundberg looked at and, at the very least, arguably construed and applied the Agreement. He noted that the parties focused on different

Agreement provisions. He quoted those provisions. And, he noted "the interrelationship and tension between the contracting out provision [at] Article XX and the bargaining union erosion provision at Article XVI, (6) of the [Agreement]." *ECF No. 1-1 at 14*. Ultimately, he determined that:

> [T]here is a net loss of one bargaining unit position. The loss of the position was not the result of the parties agreeing to eliminate the In-Plant Janitor classification in negotiations. Instead, the bargaining unit position is lost by leaving the In-Plant Janitor position unfilled and transferring the work to a contractor, as there has been no "lay off." However, leaving the job classification unfilled does result in bargaining unit erosion based upon the interpretations of the erosion language made by Arbitrators in 1978 and in 2014.
>
> *    *    *
>
> The replacement of the In-Plant Janitor position with contract employees violated the Article XVI, (6) bargaining unit erosion provision, as it has been interpreted for roughly thirty-seven (37) years.

*Id. at 15-16*.

Applying the foregoing authority, the Court is not permitted to evaluate his interpretation to determine whether it satisfies "some judicial standard of acceptability as a construction of a contract." *Drywall Dynamics, supra*, at *5 (noting that if an arbitrator "made any

interpretation or application of the agreement at all . . . the court's inquiry ends."). And, even if the Court were "convinced that the arbitrator misread the contract or erred in interpreting it, such a conviction would not be a permissible ground for vacating the award." *Id*. (*quoting Virginia Mason Hosp.*, 511 F.3d at 913-14). Thus, the Court cannot – and will not – disturb Arbitrator Lundberg's award based on ExxonMobil's contention that he "ignored" or otherwise misapplied or misapprehended Agreement language.

Similarly, the Court is not permitted to second guess the arbitrator's factual findings. As noted, ExxonMobil argues that Arbitrator Lundberg misinterpreted the parties' Agreement, in part, because he concluded that ExxonMobil transferred the janitor duties to company employees excluded from the bargaining unit when it actually transferred the duties to contract employees. The argument is unavailing. As discussed, "improvident, even silly, factfinding" cannot support a decision to reject an arbitrator's determination of the facts. *Id. at *4* (*quoting Misco*, 484 U.S. at 39)

The Court also finds unpersuasive ExxonMobil's argument that

Arbitrator Lundberg's discussion of earlier arbitration awards concerning the bargaining unit erosion provision at Article XVI caused him to fashion an award that does not draw its essence from the 2012 Agreement. *ECF No. 31 at 7.* In *Drywall Dynamics*, the arbitration board that rendered the award in that case interpreted the parties' agreements "in light of the past practices of the parties." *Drywall Dynamics*, *supra*, at *6. The Ninth Circuit approved of the arbitration board's use of the parties' past practices as informing its interpretation of the current agreements, noting that "[t]he Supreme Court has explained that 'the industrial common law – the practices of the industry and the shop – is equally a part of a collective bargaining agreement although not expressed in it.'" *Id.* (*quoting United Steel Workers of Am. v. Warrior & Gulf Nav. Co.*, 363 U.S. 574, 581-82 (1960)). And, the court concluded, the arbitration board "based its decision on the parties' agreements, both as written and as informed by past practice[ ]" so that the district court that first reviewed the arbitration award "should have deferred to the [arbitration board's] interpretation rather than inquiring into its substantive merit." *Id.*

The same analysis is appropriate here. As noted, Arbitrator Lundberg looked at and at least arguably construed and applied the Agreement. That he also considered the parties' past practice, informed by and reflected in previous arbitration awards construing the same bargaining unit erosion provision as that contained in the 2012 Agreement, was not error and did not render his Award one that did not derive its essence from the Agreement. Thus, it cannot reasonably be argued that Arbitrator Lundberg simply dispensed his own brand of industrial justice.

Finally, the Court rejects ExxonMobil's argument that Arbitrator Lundberg impermissibly tried to force the parties to negotiate new contract language rather than apply the existing Agreement language. In his Opinion and Award, the arbitrator noted that the parties "were unable to resolve the grievance through negotiations and the matter was brought to arbitration for a final and binding determination." *ECF No. 1-1 at 5*. He did not order the parties to negotiate; he issued a final and binding award.

## VI. Conclusion

For the foregoing reasons, IT IS ORDERED that the Union's motion for summary judgment (*ECF No. 27*) is GRANTED and ExxonMobil's motion for summary judgment (*ECF No. 30*) is DENIED.

Respecting the Union's request for attorney fees and costs, the Union may file an appropriate motion on or before July 11, 2016. Briefing respecting any such motion will be governed by the Local Rules.

DATED this 9th day of June, 2016.

/s/ **Carolyn S. Ostby**
United States Magistrate Judge